UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA     )
                                               )

v.                                       )        DOCKET NO. 1-22-CR-10186-RGS
                                               )

JAMESA RANKINS              )

## MOTION IN LIMINE FOR ATTORNEY-CONDUCTED VOIR DIRE

> [D]iscrimination on the basis of race, odious in all
> aspects, is especially pernicious in the administration
> of justice. The jury is to be a criminal defendant's
> fundamental protection of life and liberty against race
> or color prejudice. Permitting racial prejudice in the
> jury system damages both the fact and the perception
> of the jury's role as a vital check against the wrongful
> exercise of power by the State.
>
> *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 868 (2017)
> (internal quotations and citations omitted).

The defendant, Jamesa Rankins, respectfully moves pursuant to Fed. R. Crim. P. 24(a)(1), that this Court allow the attorneys to examine perspective jurors by asking them questions designed to identify any bias or prejudice they may have in this case and thereby ensure the defendant's Sixth Amendment right to an impartial jury. Ms. Rankins, a Black female, is accused of theft of government funds and wire fraud. She will stand trial at a time when there has been significant media attention to Unemployment Assistance and Paycheck Protection Program ("PPP") fraud prosecutions resulting from the Covid-19 pandemic that similarly tracks the nature of the prosecution. Attorney-

1

conducted voir dire should be allowed so that these and other issues can be discussed with potential jurors, and jurors with biases (both explicit and implicit) can be identified and excused from the jury in this case. Attorney-conducted voir dire will most effectively advance the goal of obtaining an unbiased and impartial jury through the intelligent exercise of peremptory challenges by counsel and full and informed consideration by the court of any challenges for cause which may be made.[1]

## ARGUMENT

Jury impartiality is a core requirement of the right to trial by jury guaranteed by the U.S. Constitution. *See Morgan v. Illinois*, 504 U.S. 719, 727 (1992) ("In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process." (internal citations omitted)). The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, *by an impartial jury* of the State and district

---

1 Attorney-conducted voir dire is the preferred method of selecting a jury in most jurisdictions across the country. *See* Debbie Swanson, "New Voir Dire Law a 'Victory for Fairness,'" 22 MASSACHUSETTS LAWYERS JOURNAL 1 (Sept. 2014), *available at* http://www.massbar.org/publications/lawyers-journal/2014/september/new-voir-dire-law-a-victory-for-fairness (noting that Massachusetts recently became the 40th state to allow attorney-conducted voir dire). Even the Massachusetts state legislature recently enacted legislation allowing attorney-conducted voir dire in all state superior court trials. M.G.L. c. 234 §28; *see also* Superior Court Standing Order 1-15: Participation in Juror Voir Dire by Attorneys and Self-Represented Parties, available at http://www.mass.gov/courts/case-legal-res/rules-of-court/superior/sup-orders/sup1-15.html. The American Bar Association recommends, "[f]ollowing initial questioning by the court, each party should have the opportunity, under the supervision of the court and subject to reasonable time limits, to question jurors directly, both individually and as a panel." American Bar Association, "Principles for Juries and Jury Trial" (2005) at 13, available at https://www.americanbar.org/content/dam/aba/administrative/american_jury/principles.pdf.

wherein the crime shall have been committed." U.S. Const. amend. VI

(emphasis added). An impartial jury is one that has not formed an opinion

prior to hearing and assessing all of the evidence, and one that bases its

decision only on the assessment of evidence not on pre-formed conclusions and

biases." *See Morgan*, 504 U.S. at 727. Voir dire plays a critical function in

protecting the right to an impartial jury. *Rosales-Lopez v. United States*, 451

U.S. 182, 188 (1981). Because of the crucial function of the peremptory

challenge in acquiring an impartial jury, a "system for the impaneling of a jury

that prevents or embarrasses the full, unrestricted exercise by the accused of

that right must be condemned." *Pointer v. United States*, 151 U.S. 396, 408–09

(1894). The Court has discretion to allow attorney-conducted voir dire. Fed. R.

Crim. P. 24(a) ("The court may examine prospective jurors or may permit the

attorneys for the parties to do so"). The court should allow it in this case in

order to best ensure that Ms. Rankins receive an unbiased and impartial jury.

I.     ATTORNEY CONDUCTED VOIR DIRE WILL PERMIT THE MOST
       INTELLIGENT EXERCISE OF PEREMPTORY CHALLENGES.

The dual purpose of voir dire is to provide enough information to exercise

challenges for cause and enough information to exercise peremptory

challenges. *Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991). These challenges are

intended to advance the goal of meeting the constitutional requirement of an

impartial jury. Challenges for cause are narrow in scope; they "permit rejection

of jurors on narrowly specified, provable and legally cognizable bas[e]s of

partiality." *Swain v. Alabama*, 380 U.S. 202, 220 (1965).2 Peremptory

challenges, on the other hand, can be exercised "without a reason stated,

without inquiry, and without being subject to the court's control." *Id.* at 220;

*but see Batson v. Kentucky*, 476 U.S. 79 (1986) and its progeny, discussed *infra*

pp. 6-7.

Because of the narrow scope of challenges for cause, the peremptory

challenge is often the most useful and important tool for a litigant in picking an

impartial jury. As noted by the Supreme Court in *Swain*, "[t]he voir dire in

American trials tends to be extensive and probing, operating as a predicate for

the exercise of peremptories … The persistence of peremptories and their

extensive use demonstrate the long and widely held belief that peremptory

challenge is a necessary part of trial by jury." *Swain*, 380 U.S. at 218-19.

In order for a peremptory challenge to serve its purposes, it must be

intelligently exercised. This requires that the parties obtain sufficient

information from the potential jurors upon which to base their challenges. *Art

Press, Ltd. V. Western Printing Machinery Co.*, 791 F.2d 616, 618 (7th Cir. 1986).

As one court has noted, "[p]eremptory challenges are worthless if trial counsel

is not afforded an opportunity to gain the necessary information upon which to

---

2 More extensive voir dire also reveals biases and prejudices that lead to challenges for cause that otherwise would go undetected. For example, in *United States v. Charles Samuel Ali*, No. 17-CR-10333-MLW, the Court declined to allow attorney-conducted voir dire, but did conduct extensive individual voir dire of each potential juror outside the presence of the other jurors. The Court also accepted questions from the attorneys to be posed to individual potential jurors. Despite inquiring of the entire venire at the beginning of the jury selection process and receiving very few affirmative responses to those questions, many jurors were struck for cause after more extensive individual questioning. Many of those jurors had not provided any affirmative responses to the questioning of the entire venire, and thus those jurors may have been seated had it not been for the Court's more extensive questioning.

base such strikes." *United States v. Ledee*, 549 F.2d 990, 993 (5th Cir 1977); *see also United States v. Corey*, 625 F.2d 704, 707 (5th Cir. 1980) ("[t]his court has previously stressed that voir dire examination not conducted by counsel has little meaning").

It has been documented that attorney-conducted voir dire results in more candid answers from prospective jurors. *See* Debora A. Cancado, *Note: The Inadequacy of the Massachusetts Voir Dire*, 5 Suffolk J. Trial & App. Adv. 81 (2000); and Lee Smith, *Voir Dire in New Hampshire: A Flawed Process*, 25 Vt. L. Rev. 575 (Winter 2001). One particular reasons for this has to do with the role of the judge during trial. As one set of commentators has noted, "the judge has an extremely difficult role to fulfill, both intellectually and emotionally. He must be the arbiter of fine points of law, coordinate the activities of all parties to facilitate a just result and remain above interparty rivalries, all of which require that he remain aloof and emotionally detached." *See* Suggs and Sales, *Juror Self-Disclosure in the Voir Dire: A Social Science Analysis*, 56 Ind. L.J. 245, 254 (1981). Attorneys are not so constrained. *See id.* These different roles are reflected most superficially by the fact that it is the judge for whom jurors must stand upon his entry into the courtroom, not the attorneys. Psychological studies show – consistent with common sense – that people tend to be less willing to talk and reveal themselves to those who must remain at least somewhat detached. *Id.* at 254-55.

In addition, attorney-conducted voir dire will contribute to more complete

information about each potential juror because the attorneys possess more in-depth knowledge of the case. Important follow-up questions are more likely to occur to an advocate than a judge for several reasons, including the fact that a judge "does not have the advocate's awareness that soon he will be making peremptory challenges based on inferences from what prospective jurors have said" and the fact that "the judge does not know the case of either party in detail, so that he cannot realize when responses have opened areas for further inquiry." Babcock, *Voir Dire: Preserving "Its Wonderful Power"*, 27 Stan. L. Rev. 545, 549 (1975). The Fifth Circuit has recognized:

> While Federal Rule of Criminal Procedure 24(a) gives wide discretion to the trial court, voir dire may have little meaning if it is not conducted at least in part by counsel. The "federal" practice of almost exclusive voir dire examination by the court does not take into account the fact that it is the parties, rather than the court, who have a full grasp of the nuances and the strength and weaknesses of the case … Experience indicates that in the majority of situations questioning by counsel would be more likely to fulfill this need [for information upon which to base the intelligent exercise of peremptory challenges] than an exclusive examination in general terms by the trial court.

*United States v. Ible*, 630 F.2d 389, 395 (5th Cir. 1980); *accord Corey*, 625 F.2d at 707; *Ledee*, 549 F.2d at 993.

Voir dire conducted solely by the court is less conducive to the intelligent exercise of peremptory challenges because the court is usually less familiar with the facts and nuances of the case. Attorneys have been working for months on the case. They are most likely to know the areas of questioning that must be explored further in order to uncover the prejudices that are most

pertinent to the evidence which will be presented at trial. They also act with an awareness that they will have to base peremptory challenges on the jurors' answers.

II.     ATTORNEY CONDUCTED VOIR DIRE WILL AID THE PARTIES IN COMPLYING WITH THE REQUIREMENTS OF *BATSON v. KENTUCKY.*

The Constitution prohibits exercising racially discriminatory peremptory challenges. *See Flowers v. Mississippi*, 139 S.Ct. 2228 (2019);\* *Georgia v. McCollum*, 505 U.S. 42, 48 (1992). Under *Batson v. Kentucky*, 476 U.S. 79 (1986), and its progeny, including *Georgia v. McCollum, supra*, and *J.E.B. v. Alabama ex tel. T.B.*, 511 U.S. 127 (1994), no party can exercise peremptory challenges based on personal race biases, gender biases, or prejudices. "In the eyes of the Constitution, one racially discriminatory peremptory strike is one too many." *Flowers*, 139 S. Ct. at 2241. Under the prevailing case law, where there is a *prima facie* case of racial discrimination in the exercise of a party's peremptory challenges, a party "must articulate a racially neutral explanation for the peremptory challenge." *McCollum*, 112 S.Ct. at 2359; *see also Batson*, 476 U.S. at 98. To enable Ms. Rankins to exercise her peremptory challenges intelligently and adequately, and to ensure that the challenges can be supported by a race and gender neutral explanation, individualized voir dire is essential.

The Supreme Court's decision in *J.E.B.* declared:

> If conducted properly, voir dire can inform litigants about
> potential jurors, making reliance upon stereotypical and

pejorative notions about a particular gender or race both unnecessary and unwise. Voir dire provides a means of discovering actual or implicit bias and a firmer bias upon which the parties may exercise their peremptory challenges intelligently. *See, e.g., Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 602 ... (1976) (Brennan, J., concurring in judgment) (voir dire 'facilitate[s] intelligent exercise of peremptory challenges and [helps] uncover factors that would dictate disqualification for cause'); *United States v. Whitt*, 718 F.2d 1494, 1497 (CA10 1983) ('Without an adequate foundation [laid by voir dire], counsel cannot exercise sensitive and intelligent peremptory challenges').

*J.E.B. v. Alabama ex tel. T.B.*, 511 U.S. 127, 143-44 (1994). As recently pointed out by the Supreme Court in *Pena-Rodriguez v. Colorado,* "Generic questions about juror impartiality may not expose specific attitudes or biases that can poison jury deliberations." *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 869, (2017) (granting new trial in case where juror made statements during deliberations indicating he relied on racial stereotypes and animus to convict the defendant). Litigants can no longer simply rely on their intuition in exercising peremptory challenges. Fairness dictates that the lawyers be permitted the opportunity to voir dire the jury panel to ensure that a fair and impartial jury is selected consistent with the dictates of *Batson* and its progeny.

III.   ATTORNEY-CONDUCTED VOIR DIRE IS THE BEST WAY TO IDENTIFY IMPLICIT BIAS IN PROSPECTIVE JURORS.

In addition to the more obvious areas of potential juror bias, attorneys are in a better position to question potential jurors about implicit race bias in this case. "Implicit bias" is a term of art referring to the formation of opinions based on "relatively unconscious and relatively automatic features of

8

prejudiced judgment and social behavior." *See* Brownstein, Michael, "Implicit

Bias," The Stanford Encyclopedia of Philosophy (Spring 2017 Edition), Edward

N. Zalta (ed.), available at https://plato.stanford.edu/entries/implicit-bias. In

order words, implicit bias draws conclusions based on pre-formed opinions

rather than the evidence presented. In terms of juror impartiality, "[t]he theory

of the law is that a juror who has formed an opinion cannot be impartial."

*Morgan,* 504 U.S. at 727 (internal citation omitted). Drawing conclusions on

the basis of "implicit bias" would contravene the core principle of impartiality of

the Sixth Amendment.

The research group Perception Institute[3] offers the following

definition of "implicit bias" –

> Thoughts and feelings are "implicit" if we are unaware of
> them or mistaken about their nature. We have a bias when,
> rather than being neutral, we have a preference for (or
> aversion to) a person or group of people. Thus, we use the
> term "implicit bias" to describe when we have attitudes
> towards people or associate stereotypes with them without
> our conscious knowledge. A fairly commonplace example of
> this is seen in studies that show that white people will
> frequently associate criminality with black people without
> even realizing they're doing it.

"Implicit Bias," Perception Institute, available at

https://perception.org/research/implicit-bias/. The Sixth Circuit has

explained the concept this way:

---

3 According to its website, the Perception Institute is a national consortium of social scientists, law professors, and
advocates focusing on the role of the mind sciences in law, policy, and institutional practices. Its cofounders are Alexis
McGill Johnson, of Princeton and Yale Universities, and Seton Hall University School of Law Professor Rachel Godsil,
renowned author and lecturer on issues of implicit bias and racial anxiety. *See* https://perception.org/about-us/team/.

> The concept of "implicit bias" is defined, generally, as bias that is "not necessarily openly and explicitly expressed, but [is] harbored nonetheless." Implicit biases are "often not conscious, intentional, or maliciously-based," as opposed to explicit bias – generally defined as "bias that is openly expressed."

*United States v. Ray*, 803 F.3d 244, 260-61 (6th Cir. 2015) (citing Melissa L. Breger, *The (in)visibility of Motherhood in Family Court Proceedings*, 36 N.Y.U. Rev. L. & Soc. Change 555, 560 (2012). Associate Justice Kenneth Desmond of the Massachusetts Appeals Court has said, "[i]n the most basic sense, implicit bias is 'thoughts about other people you didn't know you had.' Consequently, it is often difficult for individuals who do not fall victim to the impact of certain biases to identify the ways they are manifested." Hon. Kenneth V. Desmond, Jr., *The Road to Race and Implicit Bias Eradication*, Boston Bar J., Summer 2016, at 3, available at https://bostonbarjournal.com/2016/07/13/the-road-to-race-and-implicit-bias-eradication/.

A plethora of scholarly articles support that implicit social bias poses a challenge to legal theory and practice, and to jury selection in particular because unconscious bias can lead to erroneous assumptions that contravene the accused's Sixth Amendment right to a trial by an impartial jury. *See e.g., Ray*, 803 F.3d at 260–61 (citing Mark W. Bennett, *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge–Dominated Voir Dire, the Failed Promise of Batson, and Proposed Solutions*, 4 Harv. L. & Pol'y Rev. 149, 152 (2010); Jerry Kang & Kristin Lane, *Seeing Through Colorblindness: Implicit Bias and the Law*, 58 UCLA L. REV. 465, 465 (2010); Justin D.

Levinson, *Forgotten Racial Equality: Implicit Bias, Decisionmaking, and Misremembering*, 57 DUKE L.J. 345, 345 (2007)). *See also* Anna Roberts, *(Re)forming the Jury: Detection and Disinfection of Implicit Juror Bias*, 44 Conn. L. Rev. 827, 833 (2012); Cynthia Lee, *A New Approach to Voir Dire on Racial Bias*, 5 UC Irvine L. Rev. 843, 844 (2015) ("'Implicit biases' are discriminatory biases based on either implicit attitudes-feelings that one has about a particular group-or implicit stereotypes-traits that one associates with a particular group. They are so subtle that those who hold them may not realize that they do. . . African-Americans, for example, are stereotypically linked to crime and violence; their behavior is more likely to be viewed as violent, hostile, and aggressive than is the behavior of whites; and they are more readily associated with weapons than are whites."); Dale Larson, *A Fair and Implicitly Impartial Jury: An Argument for Administering the Implicit Association Test During Voir Dire*, 3 DePaul J. for Soc. Just. 139, 154 (2010) ("Implicit bias against socially underprivileged groups and outgroups is prevalent in our culture. As a result, there is a chance that implicit bias is present anytime a member of such a group is the defendant in a criminal trial."); Siegfried C. Coleman, *Reliance on Legal Fiction: The Race-Neutral Juror*, 41 S.U. L. Rev. 317 (2014) ("This article highlights the notion that these unchecked biases are alive and well in all jurors as an innocent and necessary human characteristic and advocates the position that these biases should be acknowledged and formally addressed."); Hon. Kenneth V. Desmond, Jr., *The Road to Race and Implicit*

*Bias Eradication*, Boston Bar J., Summer 2016, at 3 ("Throughout the past several decades, State and Federal appellate courts have candidly acknowledged the implicit biases of litigants and jurors.").

Discussing some of the shortfalls of judge conducted voir dire, Federal District Court Judge Mark Bennett acknowledged that, in testing for prospective jurors' biases judges commonly ask questions such as, "Can all of you be fair and impartial in this case?" See Mark W. Bennett, *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge–Dominated Voir Dire, the Failed Promise of Batson, and Proposed Solutions*, 4 Harv. L. & Pol'y Rev. 149, 152 (2010). While jurors almost uniformly answer that they can be fair, *Id.* 159, Judge Bennett noted that merely asking potential jurors that question does little or nothing to ferret out implicit bias, in part, because the question itself presumes that implicit bias is consciously known to the prospective juror, even though by its nature an implicit bias is not consciously known to the prospective juror. *See id.* ("Thus, a trial court judge schooled in the basics of implicit bias would be delusional to assume that this question adequately solves implicit bias.").[4]

Judge Bennett also points to both his own experience and empirical research which suggests that prospective jurors tend to give judges answers

---

4 When selecting a jury for a trial in his courtroom, Judge Bennett begins by showing potential jurors a video from *What Would You Do?*, an ABC show. The clip shows glaring differences in the way a black male, a white male, and an attractive white female are treated when attempting to steal a bicycle in a park. *What Would You Do?* (ABC television broadcast May 7, 2010), available at http://www.youtube.com/watch?v=ge7i60GuNRg. At the conclusion of jury selection Judge Bennett asks each potential juror to take a pledge, which includes a pledge against bias. Kang, Jerry et al., *Implicit Bias in the Courtroom*, 59 UCLA L. Rev. 1124, 1182 (2012).

that they believe are socially desirable – answers that the judge wants to hear, whereas they respond more candidly to lawyers. *Id.* (citing Susan E. Jones, *Judge- Versus Attorney-Conducted Voir Dire: An Empirical Investigation of Juror Candor*, 11 Law & Hum. Behav. 131 (1987)). Indeed, after being told by the court that all jurors must be fair and impartial, when asked whether s/he can be fair and impartial on issues of race it would be difficult for a prospective juror to confess frankly the ways in which s/he may be biased. Attorney-conducted voir dire is the most effective way for jurors to discuss any implicit biases they might have.

## CONCLUSION

For the reasons stated above, the Court should permit defense counsel and the government's lawyer to conduct voir dire of the potential jurors on matters of theft of government funds, race and ethnicity, and implicit bias to enable an accurate assessment of potential jurors and their relevant biases and to enable effective and adequate exercise of peremptory challenges during juror selection.

Respectfully Submitted,
Jamesa Rankins
By her counsel,

Date: 10/25/2023

/s/ Vivianne Jeruchim_____
Vivianne Jeruchim, Esq.
BBO #547598
Jeruchim & Davenport, LLP
50 Congress St., Suite 615
Boston, MA   02109
617/720-6047

CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on October 25, 2023.

Date: 10/25/2023                             /s/ Vivianne Jeruchim_____
                                             Vivianne Jeruchim, Esq.